1  DONALD F. ZIMMER, JR. (State Bar No. 112279)
2  KRISTA L. COSNER (State Bar No. 213338)
   DRINKER BIDDLE & REATH LLP
3  50 Fremont Street, 20th Floor
   San Francisco, California 94105
4  Telephone: (415) 591-7500
   Facsimile: (415) 591-7510
5
   Attorneys for Defendants
6  SMITHKLINE BEECHAM CORPORATION dba
   GLAXOSMITHKLINE and McKESSON
7  CORPORATION
8
                    UNITED STATES DISTRICT COURT
9
                   NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11
12 HECTOR THORNTON,                    Case No.

13              Plaintiff,             NOTICE OF REMOVAL AND
                                       REMOVAL ACTION UNDER 28 U.S.C.
14      v.                             § 1441(B) (DIVERSITY) and 28 U.S.C. §
                                       1441(C) (FEDERAL QUESTION) OF
15 SMITHKLINE BEECHAM                  DEFENDANT SMITHKLINE
   CORPORATION dba                     BEECHAM CORPORATION d/b/a
16 GLAXOSMITHKLINE and McKESSON        GLAXOSMITHKLINE
   CORPORATION,
17
                Defendants.
18
19
20 **TO THE CLERK OF THE COURT:**
21         Defendant Smithkline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"),
22 hereby removes to this court, the state action described below.  Removal is warranted
23 under 28 U.S.C. §1441 because this is an action over which this Court has original
24 jurisdiction under 28 U.S.C. §§ 1331 and 1332.
25 **I.     BACKGROUND**
26         1.      On October 11, 2007, Plaintiff Hector Thorton ("Plaintiff"), represented by
27 The Miller Firm of Orange, Virginia, filed an action in the Superior Court of the State of
28 California for the County of San Francisco, titled *Hector Thornton v. Smithkline Beecham*

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\3920181\2     NOTICE OF REMOVAL AND REMOVAL                              CASE NO.

1  *Corporation d/b/a GlaxoSmithKline, and McKesson Corporation*, Case No. CGC 07-

2  468089 ("the/this action"). A true and correct copy of the Complaint in the action is

3  attached as Exhibit "A" to the Declaration of Krista L. Cosner In Support of Notice of

4  Removal and Removal Action Under 28 U.S.C. § 1441(b) (Diversity) and 28 U.S.C. §

5  1441(c) (Federal Question) of Defendant SmithKline Beecham Corporation dba

6  GlaxoSmithKline (hereafter "Cosner Decl.").

7       2.     Defendants filed their answer to Plaintiff's Complaint on November 19,

8  2007. *See* Cosner Decl. Exh. B. There have been no additional proceedings in the state

9  court action. Cosner Decl. ¶ 3.

10       3.     This is one of many cases that have been filed recently in both federal and

11  state courts across the country involving the prescription drug Avandia®. Cosner Decl. ¶

12  6. Plaintiff's counsel, The Miller Firm, has filed Avandia cases in both state and federal

13  courts, but only in the cases filed in California has The Miller Firm named McKesson or

14  any distributor as a defendant. Cosner Decl. ¶ 7.

15       4.     On October 16, 2007, the Judicial Panel on Multidistrict Litigation

16  ("JPML") issued an order directing that then-pending Avandia-related cases be

17  transferred and coordinated for pretrial proceedings in the United States District Court for

18  the Eastern District of Pennsylvania, before the Honorable Cynthia M. Rufe, pursuant to

19  28 U.S.C. § 1407. *See* Transfer Order, *In re Avandia Marketing, Sales Practices and*

20  *Products Liability Litigation*, MDL 1871 (E.D.P.A.) (a true and correct copy of which is

21  attached as Exhibit "C" to Cosner Decl.). Additional Avandia-related cases pending in

22  federal court, which are common to the actions previously transferred to the Eastern

23  District of Pennsylvania and assigned to Judge Rufe, are treated as potential tag-along

24  actions. *See id.*; *see also* Rules 7.4 and 7.5, R.P.J.P.M.L. 199 F.R.D. 425, 435-36 (2001).

25  GSK intends to seek the transfer of this action to that Multidistrict Litigation, *In re*

26  *Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871, and

27  shortly will provide the JPML with notice of this action pursuant to the procedure for

28  "tag along" actions set forth in the rules of the JPML. Cosner Decl. ¶ 8.

5.     As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because GSK has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332.

## II.     DIVERSITY JURISDICTION

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.     Diversity of Citizenship

7.     Plaintiff Hector Thornton alleges that he is a resident of the State of Ohio. *See* Cosner Decl. Exh. A, 9:15-16. Accordingly, Plaintiff is a citizen of the State of Ohio.

8.     GSK is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania, and therefore is a citizen of Pennsylvania for purposes of determining diversity.  28 U.S.C. § 1332(c)(1); Cosner Decl. ¶ 9.

9.     The remaining named defendant, McKesson, is a Delaware corporation with its principal place of business in San Francisco, California, and therefore is a citizen of California. *See* Cosner Decl. Exh. D, ¶ 3.

10.     Accordingly, there is complete diversity of citizenship between Plaintiff and defendants.

11.     As explained in detail below, McKesson is fraudulently joined in this lawsuit and its citizenship must be ignored for the purpose of determining the propriety of removal. *See McCabe v. General Foods*, 811 F.2d 1336, 1339 (9th Cir. 1987). Accordingly, the forum defendant rule is not implicated in this case.

12.     Even if McKesson were not fraudulently joined, its citizenship would not affect this Court's jurisdiction. *See Lively v. Wild Oats Markets, Inc.*, 456 F.3d 933 (9th Cir. 2006) (holding that the forum defendant rule limitation on diversity-based removal jurisdiction is a procedural, or non-jurisdictional, rule).

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

SF1\3920018\2

NOTICE OF REMOVAL AND REMOVAL

3

CASE NO.

B.    **The Amount In Controversy Requirement Is Satisfied**

13.    It is apparent on the face of the Complaint that Plaintiff seeks an amount in controversy in excess of $75,000, exclusive of costs and interest.

14.    Plaintiff alleges that as a result of his Avandia use, he sustained "physical and financial damages including pain and suffering." *See* Cosner Decl. Exh. A, 32:18-19. He further alleges "severe and permanent physical injuries." *See id.* at 49:20.

15.    Plaintiff claims to have "suffered extensive monetary and pecuniary losses and other compensatory damages," and to have "incurred and paid out necessary medical, hospital, and concomitant expenses," which he alleges will continue into the future. *See* Cosner Decl. Exh. A, 40:2-4, 49:22-23.

16.    Plaintiff seeks actual, punitive and exemplary damages. *See* Cosner Decl. Exh. A, 41:6-8, 49:3-4.

17.    Punitive damages are included in the calculation of the amount in controversy. *See Bell v. Preferred Life Assurance Society*, 320 U.S. 238, 240 (1943).

18.    Given the allegations set forth above, the face of the Complaint makes clear that Plaintiff seeks an excess of $75,000, exclusive of interest and costs. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002).

C.    **The Citizenship Of McKesson Must Be Ignored Because McKesson Is Fraudulently Joined**

19.    A defendant is fraudulently joined, and its presence in the lawsuit is ignored for purposes of determining diversity, "if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *see also Hamilton Materials, Inc. v. Dow Chemical Corporation*, ____ F.3d ___, (9th Cir. 2007), 2007 WL 2080179 at *1 (9th Cir. 2007).

20.    McKesson is fraudulently joined because Plaintiff has failed to make any material allegations against it. *See Brown v. Allstate Insur.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding in-state defendants fraudulently joined where "no material

1   allegations against [the in-state defendants] are made"). Plaintiff specifically alleges that

2   Avandia was created and marketed by GSK; that GSK had longstanding knowledge of

3   Avandia-related dangers which GSK failed to adequately warn and disclose to

4   consumers; that GSK concealed, suppressed and failed to disclose these referenced

5   dangers; that GSK has represented and has continued to represent that it manufactures

6   and/or sells safe and dependable pharmaceuticals; that GSK has failed to adequately warn

7   or inform consumers, such as Plaintiff or Plaintiff's prescribing physician of known

8   defects in Avandia; and that as a result of GSK's omissions and/or misrepresentations,

9   Plaintiff ingested Avandia. *See* Cosner Decl. Exh. A, at ¶¶ 20:14, 24:20-22, 25:5-6, 26:9-

10  10, 31:12-13, 32:17-18.

11       21.     Plaintiff fails to make any specific material allegations against McKesson,

12  and does not allege that he ingested Avandia that was distributed by McKesson,

13  compelling the conclusion that Plaintiff fraudulently joined McKesson in an attempt to

14  use the forum defendant rule. *See e.g., Lyons v. American Tobacco Co.*, No. Civ. A. 96-

15  0881-BH-S, 1997 U.S. Dist. LEXIS 18365 (S.D. Ala. 1997) (holding that there is "no

16  better admission of fraudulent joinder of [the resident defendants]" than the failure of the

17  plaintiff "to set forth any specific factual allegations" against them). Plaintiff cannot cure

18  this deficiency by simply relying on allegations directed toward "Defendants" or GSK

19  alone.

20       22.     In the body of his Complaint, Plaintiff asserts claims of: (1) negligence; (2)

21  negligent failure to warn; (3) negligence per se; (4) negligent misrepresentation; (5)

22  breach of express warranty; (6) breach of implied warranty; (7) strict products liability –

23  defective design; (8) strict products liability – manufacturing and design defect; (9) strict

24  products liability – failure to adequately warn; (10) fraudulent misrepresentation; and

25  (11) violations of California Unfair Trade Practices and Consumer Protection Law. In

26  these allegations, Plaintiff avers that collectively, "Defendants" or "Defendants GSK and

27  McKesson," defectively designed and manufactured the product; concealed knowledge of

28  unreasonably dangerous risks associated with the product; failed to conduct adequate and

1   sufficient pre-clinical testing and post-marketing surveillance of the product; failed to

2   provide FDA with complete and adequate information regarding the product; failed to

3   warn consumers and/or their health care providers of certain risks associated with the

4   product; failed to utilize adequate and non-misleading labeling; and made affirmative

5   misrepresentations and omissions regarding the risks associated with taking Avandia. All

6   of these claims are substantively based on the design and manufacture of the product,

7   failure to warn, fraudulent concealment, and inadequate pre-clinical testing and post-

8   marketing surveillance. As a wholesale distributor of Avandia, McKesson played no role

9   in its testing, marketing or advertising. All McKesson did was pass along sealed

10  packages of Avandia, in unadulterated form, to hospitals and other businesses in the

11  healthcare industry. *See* Cosner Decl, Exh. D, ¶¶ 6-7.[1]

12      23.    Further, based on the "learned intermediary" doctrine, McKesson bore no

13  duty to warn Plaintiff. The "learned intermediary" doctrine, the foundation of

14  prescription drug product liability law, provides that the duty to warn about a drug's risks

15  runs from the manufacturer to the physician (the "learned intermediary"), and then from

16  the physician to the patient. *See Brown v. Superior Court (Abbott Labs.)*, 44 Cal. 3d

17  1049, 1061-62, n.9 (1988); *Carlin v. Superior Court (Upjohn Co.)*, 13 Cal. 4th 1104,

18  1116 (1996). It is the physician, and only the physician, who is charged with prescribing

19  the appropriate drug and communicating the relevant risks to the patient. *See Brown*, 44

20  Cal. 3d at 1061-62.

21      24.    GSK and the FDA prepared the information to be included with the

22  prescription drug, Avandia, with the FDA having final approval of the information that

---

[1] The Declaration of McKesson's representative, Greg Yonko, may be considered by the Court in determining whether McKesson is fraudulently joined. *Maffei v. Allstate California Ins. Co.*, 412 F.Supp.2d 1049 (E.D. Cal. 2006) ("[t]he court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available") *citing Lewis v. Time, Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979) ("it is well settled that upon allegations of fraudulent joinder...federal courts may look beyond the pleadings to determine if the joinder...is a sham or fraudulent device to prevent removal"). *See also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998) (evidence may be presented by the removing party that there is no factual basis for the claims pleaded against the local defendant).

1    could be presented.  Once the FDA has determined the form and content of the

2    information, it is a violation of federal law to augment the information.  *See* 21 U.S.C.

3    §331(k) (prohibiting drug manufacturers and distributors from causing the "alteration,

4    mutilation, destruction, obliteration, or removal of the whole or any part of the labeling"

5    of an FDA-approved drug held for sale); *Brown v. Superior Court*, 44 Cal. 3d at 1069

6    n.12 (noting that the FDA regulates the testing, manufacturing, and marketing of drugs,

7    including the content of their warning labels).  Therefore, any safety information

8    McKesson had about Avandia would have come from GSK in the form of FDA-approved

9    packaging and labeling.  McKesson could not change the labeling it was given by GSK as

10   approved by the FDA without violating federal law.  No duty can be found where it

11   requires a party to violate the law to fulfill it.

12       25.    As such, given the lack of a causal connection between the injuries alleged

13   by Plaintiff and McKesson's conduct, as well as the absence of any legal or factual basis

14   for Plaintiff's claim against McKesson, McKesson's joinder is fraudulent and its

15   citizenship should be ignored for purposes of determining the propriety of removal.

16   **III.   FEDERAL QUESTION JURISDICTION**

17       26.    This Court also has federal question jurisdiction over Plaintiff's claims

18   under 28 U.S.C. § 1331 and the principles set forth in *Grable & Sons Metal Prods., Inc.*

19   *v. Darue Eng'g & Mfg.*, 125 S. Ct. 2363 (2005).

20       27.    As more fully explained below, Plaintiff has made violations of federal law

21   critical elements of several of his claims.

22       **A.    Plaintiff's Claims Require Construction and Application of the FDCA**
23       **         and Its Implementing Regulations**

24       28.    Count III of Plaintiff's Complaint, "Negligence Per Se," explicitly alleges

25   that defendants violated federal law.  Plaintiff claims, *inter alia,* that "[d]efendants

     "violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. Section 301 *et seq.,*

26   related amendments and codes and federal regulations provided thereunder, and other

27   applicable laws, statutes, and regulations."  *See* Cosner Decl. Exh A, ¶ 53.

28

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\392018\2       NOTICE OF REMOVAL AND REMOVAL                    CASE NO.

29.    Plaintiff further alleges that "[d]efendants' acts constituted an adulteration and/or misunderstanding *[sic]* as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331. . . . " *See* Cosner Decl. Exh A, ¶ 55.

30.    Moreover, Count II of the Plaintiff's Complaint, "Negligent Failure to Adequately Warn," and Count IX, "Strict Products Liability – Failure to Adequately Warn" also require construction and application of the FDCA and implementing federal regulations, which govern approval of prescription drugs and regulate prescription drug manufacturers' public and promotional statements, including all aspects of warnings and labeling.

31.    As a currently-marketed prescription drug, Avandia is subject to extensive regulation by the FDA. The FDCA requires the FDA to ensure that "drugs are safe and effective" for their intended uses, 21 U.S.C. § 393(b)(2)(B), in part by "promptly and officially reviewing clinical research and taking appropriate action on the marketing of regulated products." 21 U.S.C. § 393(b)(1). The Secretary of the FDA has the authority to promulgate regulations to enforce the FDCA, which are codified in the *Code of Federal Regulations*, 21 C.F.R. § 200, *et seq. See* 21 U.S.C. § 371(a).

32.    To accomplish its purpose, the FDA maintains a Center for Drug Evaluation and Research (the "CDER"). The CDER regulates pharmaceutical companies' development, testing and research, and manufacture of drugs. The CDER examines data generated by these companies to conduct a risk/benefit analysis and make an approval decision. The CDER also ensures truthful advertising for prescription drugs, in part by approving Package Inserts that properly outline benefit and risk information. Once drugs are marketed, the CDER continues to monitor them for unexpected health risks that may require public notification, a change in labeling, or removal of the product from the market. In short, the CDER evaluates and monitors the effectiveness and safety of prescription drugs. *See* http://www.fda.gov/cder/about/faq/default.htm.

33.    Promotional communications to physicians about Avandia are contained within, and restricted by, warning, labeling, and promotional materials, such as the

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\3920182

NOTICE OF REMOVAL AND REMOVAL

8

CASE NO.

1   Package Insert, that are approved and monitored by the FDA to ensure the provision of

2   accurate information about the drug's respective risks and benefits.  Under federal

3   regulations, even claims in promotional labeling or advertising must be consistent with

4   approved labeling.  21 C.F.R. § 202.1(e)(4) (2005).

5       34.    The FDA's responsibility to regulate prescription drugs sold in the United

6   States, and to enforce laws with respect to such drugs, inclusive of the precise content

7   and format of prescription drug labeling (*e.g.*, the instructions, warning, precautions,

8   adverse reaction information provided by manufacturers, and marketing materials), is

9   plenary and exclusive.  *See* 21 U.S.C. § 301, *et seq.*

10      35.    Plaintiff has explicitly alleged violations of federal law in his "Negligence

11  Per Se" claim, and has made alleged violations of federal law, a critical element of his

12  "Negligent Failure to Adequately Warn" claim and his "Strict Products Liability – Failure

13  to Adequately Warn" claim.  Accordingly, Plaintiff's claims necessarily raise substantial

14  federal questions by requiring the Court to construe and apply the FDCA and its

15  implementing regulations.

16      **B.    Federal Control of Drug Labeling and Warning**

17      36.    On January 24, 2006, the FDA announced a rule that includes a detailed

18  and emphatic statement of the FDA's intention that its regulation and approval of

19  prescription drug labeling preempt most state law claims related to the adequacy of

20  prescription drug warnings because such claims frustrate "the full objectives of the

21  Federal law."  *See* Requirements on Content and Format of Labeling for Human

22  Prescription Drug and Biologic Products, 71 Fed. Reg. 3922, 3934 (Jan. 24, 2006) ("FDA

23  believes that under existing preemption principles, FDA approval of labeling under the

24  act. . . . preempts conflicting or contrary State law.").  *See also In re Bextra and*

25  *Celebrex Marketing,* 2006 WL 2374742 (N.D. Cal., August 16, 2006) (Celebrex

26  decision); *In re Bextra and Celebrex Marketing,* 2006 WL 2472484 (N.D. Cal., August

27  24, 2006) (Bextra decision).

28      37.    Plaintiff alleges that GSK failed to disclose certain risks of Avandia.  *See*

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA  94105

9

1  *e.g.,* Cosner Decl. Exh A., ¶ 24:21-2. This allegation necessarily requires Plaintiff to

2  establish that the FDA, which has exclusive jurisdiction over the labeling of prescription

3  drugs, would have approved the warning the Plaintiff alleges should have been given.

4      38.   Accordingly, there is a substantial federal question with respect to whether

5  Plaintiff can claim that GSK violated state law in light of the FDA's control of Avandia's

6  labeling and warning and its position on conflict preemption.

7      **C.**   **The Federal Interest In Providing A Forum**

8      39.   The federal government has a strong interest in having a federal court

9  decide several of the issues in this case. Among these issues are:

10      a.   whether any conduct of GSK violated any federal laws or

11          regulations related to the labeling and marketing of Avandia; and

12      b.   whether the FDA-approved Avandia label was false and misleading,

13          as alleged by Plaintiff, and whether a state may impose liability on

14          GSK for not providing more information regarding certain risks, as

15          Plaintiff contends GSK should have done.

16      40.   Plaintiff's claims may be vindicated or defeated only by construction of

17  federal statutes and regulations. The availability of a federal forum to protect the

18  important federal interests at issue is therefore consistent with *Grable*, and determination

19  by a federal court of the substantial and disputed federal issues that lie at the heart of this

20  case would not "disturb any congressionally approved balance of federal and state

21  judicial responsibilities." *Grable*, 125 S. Ct. at 2368.

22  **IV.**   **CONFORMANCE WITH PROCEDURAL REQUIREMENTS**

23      41.   This Court has jurisdiction over this matter based on federal question and

24  diversity of citizenship, and the present lawsuit may be removed from the Superior Court

25  of the State of California for the County of San Francisco, and brought before the United

26  States District Court for the Northern District of California, pursuant to 28 U.S.C. §§

27  1331, 1332 and 1441.

28      42.   Service of the Complaint was made upon GSK on October 25, 2007.

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SFI\392018\2  NOTICE OF REMOVAL AND REMOVAL            CASE NO.

1   Cosner Decl. ¶ 10.  On October 24, 2007, McKesson was served with Plaintiff's

2   Complaint.  *See* Cosner Decl. Exh. D, ¶ 4.  Therefore, this Removal has been timely filed

3   within 30 days of service, pursuant to 28 U.S.C. § 1446(b).

4          43.    All of the properly joined and served defendants consent to this removal.

5   Although McKesson's consent to remove is not necessary because it is fraudulently

6   joined, McKesson nonetheless consents to removal.  *See* Cosner Decl. Exh. D, ¶ 5.  *See*

7   *also, e.g. Easley v. 3M Company, et al.*, 2007 WL 2888335 (N.D. Cal. 2007) *citing*

8   *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).

9          44.    The United States District Court for the Northern District of California is

10  the federal judicial district encompassing the Superior Court of the State of California for

11  the County of San Francisco, where this suit was originally filed.  Venue therefore is

12  proper in this district under 28 U.S.C. § 1441(a).

13         45.    Pursuant to the provisions of 28 U.S.C §1446(d), GSK will promptly file a

14  copy of this Notice of Removal with the clerk of the Superior Court of the State of

15  California for the County of San Francisco, where this suit was originally filed.

16         46.    Defendant reserves the right to amend or supplement this Notice of

17  Removal.

18         **WHEREFORE**, GSK respectfully removes this action from the Superior Court

19  of the State of California for the County of San Francisco to the United States District

20  Court for the Northern District of California, pursuant to 28 U.S.C. § 1441.

21

22  Dated: November 20, 2007                    DRINKER BIDDLE & REATH LLP

23

24  _____
    DONALD F. ZIMMER, JR.
    KRISTA L. COSNER

25

26  Attorneys for Defendants
    SMITHKLINE BEECHAM
    CORPORATION dba
    GLAXOSMITHKLINE and McKESSON
    CORPORATION

27

28